Query    Reports    Utilities    Help    What's New    Log Out

CLOSED

# U.S. District Court
## Western District of Virginia (Roanoke)
## CRIMINAL DOCKET FOR CASE #: 7:24-mj-00004-CKM-1

Case title: USA v. Thompson                      Date Filed: 01/19/2024
Other court case number: 1:24MJ5009 District of Massachusetts      Date Terminated: 01/23/2024

Assigned to: Honorable C. Kailani Memmer

**Defendant (1)**

**Estes Carter Thompson, III**                represented by  **Beatrice Diehl**
*TERMINATED: 01/23/2024*                                    Office of the Federal Public Defender
                                                            Western District of Virginia
                                                            210 First Street SW, Suite 400
                                                            Roanoke, VA 24011
                                                            540-777-0891
                                                            Email: beatrice_diehl@fd.org
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Public Defender or*
                                                            *Community Defender Appointment*
                                                            *Bar Status: US-Govt-Agency*

**Pending Counts**                            **Disposition**
None

**Highest Offense Level (Opening)**
None

**Terminated Counts**                         **Disposition**
None

**Highest Offense Level (Terminated)**
None

**Complaints**                                **Disposition**
None

**Plaintiff**

**USA**

represented by **Lee Brett**
DOJ-USAO
Western District of Virginia
310 First Street, SW, Ste 906
Roanoke, VA 24011
540-857-2250
Email: lee.brett@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: US Attorney*
*Bar Status: DOJ*

Email All Attorneys

Email All Attorneys and Additional Recipients

| Date Filed | # | Select<br>all / clear | Docket Text |
|---|---|---|---|
| 01/18/2024 | 1 | ☑ | Charging Documents from District of Massachusetts - Rule 5(c)(3) as to Estes Carter Thompson, III (Attachments: # 1 Affidavit)(kds) (Additional attachment(s) added on 1/19/2024: # 2 Executed Warrant) (kds). Modified on 1/19/2024 Added executed warrant pdf (kds). (Entered: 01/19/2024) |
| 01/18/2024 | | | Arrest - 5(c)(3) of Estes Carter Thompson, III (kds) (Entered: 01/19/2024) |
| 01/19/2024 | 2 | | NOTICE OF HEARING as to Estes Carter Thompson, III (CUSTODY) **(FTR)** Initial Appearance - Rule 5c3 set for 1/23/2024 01:00 PM in Roanoke before Honorable C. Kailani Memmer.(kds) |
| 01/22/2024 | 3 | | **SEALED** Pretrial Bail Report as to Estes Carter Thompson, III. (jp) |
| 01/23/2024 | 4 | ☑ | Minute Entry for proceedings held before Honorable C. Kailani Memmer:Initial Appearance Rule 5(c)(3) Complaint/Indictment - Other District as to Estes Carter Thompson, III held on 1/23/2024 Appearance entered by Lee Brett for USA,Beatrice Diehl for Estes Carter Thompson, III on behalf of defendant. Defendant remanded to Custody. (FTR Operator: K.Saville)(kds) |
| 01/23/2024 | 5 | ☑ | FTR Log Notes as to Estes Carter Thompson, III for Initial Appearance in the Roanoke Division in CR2 held before Judge C. Kailani Memmer on 1/23/2024. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. FTR Operator: K.Saville (kds) |
| 01/23/2024 | 6 | | CJA 23 Financial Affidavit as to Estes Carter Thompson, III. (kds) |
| 01/23/2024 | 7 | | ORAL ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Estes Carter Thompson, III. Entered by Honorable C. Kailani Memmer on 1/23/2024. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(kds) |
| 01/23/2024 | 8 | | ORAL ORDER as to Estes Carter Thompson, III that pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (Oct. 21, 2020), the court ORDERS the United States to adhere to the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83(1963), and its progeny. Entered by Honorable C. Kailani Memmer on 1/23/2024. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(kds) |

| 01/23/2024 | 9 | ☑ | ORDER as to Estes Carter Thompson, III that pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (Oct. 21, 2020), the court ORDERS the United States to adhere to the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83(1963), and its progeny. Signed by Honorable C. Kailani Memmer on 1/23/2024.(kds) |
| --- | --- | --- | --- |
| 01/23/2024 | 10 | ☑ | COMMITMENT TO ANOTHER DISTRICT as to Estes Carter Thompson, III. Defendant committed to District of District of Massachusetts. Signed by Honorable C. Kailani Memmer on 1/23/2024.(kds) |
| 01/23/2024 | 11 | ☑ | WAIVER of Rule 5(c)(3) Hearing by Estes Carter Thompson, III. (kds) |

View Selected

or

Download Selected

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Massachusetts

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )   Case No. 24-MJ-5009-JGD |
| | ) |
| | ) |
| ESTES CARTER THOMPSON III | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ September 2, 2023 _____ in the county of _____ Suffolk _____ in the

_____ District of _____ Massachusetts _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) and (e) | Sexual Exploitation of Children, and attempt |
| 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) | Possession of Child Pornography depicting prepubescent minor, and attempt |

This criminal complaint is based on these facts:

Please see the attached Affidavit of Special Agent Jason D. Costello, attached hereto and incorporated herein.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Jason D. Costello, FBI
*Printed name and title*

Sworn to before me and signed via telepone.

Date: _____ 01/09/2024 _____

_____
*Judge's signature*

City and state: _____ Boston, Massachusetts _____

Hon. Judith G. Dein, U.S. Magistrate Judge
*Printed name and title*

24-MJ-5009-JGD

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A CRIMINAL COMPLAINT

I, Jason D. Costello, being duly sworn, state as follows:

### INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since July 2004. I am assigned to the FBI's Boston Field Office. Since November 2020, I have served in the role of Airport Liaison Agent Coordinator at Boston Logan International Airport (BOS) where I investigate violations of federal law in the airport environment and onboard aircraft. In my capacity as an Airport Liaison Agent, I work with other law enforcement agencies at BOS, including the Massachusetts State Police (MSP).

2. I make this affidavit in support of a criminal complaint charging Estes Carter THOMPSON III ("THOMPSON"), year of birth 1987, for violating 18 U.S.C. § 2251(a) and (e) (Sexual Exploitation of Children, and attempt) and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (Possession of Child Pornography depicting prepubescent minor, and attempt).

3. The facts gathered to date in the investigation and described in this affidavit demonstrate probable cause that on September 2, 2023, while on an airplane en route to Boston, THOMPSON attempted to sexually exploit a child. Specifically, he attempted to surreptitiously video-record a fourteen-year-old female passenger as she used the lavatory and thereby exposed her genitalia and buttocks, aboard a commercial aircraft in flight, on which THOMPSON was working as a flight attendant. THOMPSON attempted to make the recording by directing the minor female to a specific lavatory and then concealing his Apple iPhone, which was equipped to record a video, in the lavatory just prior to the minor female's use of said lavatory.

4. The facts gathered to date in the investigation and described in this affidavit further

demonstrate probable cause that on September 2, 2023, while he was located in Boston, THOMPSON possessed child pornography in his Apple iCloud account. Specifically, in his iCloud account, he possessed surreptitious video recordings and images of the exposed genitalia and buttocks of four minor female passengers using lavatories aboard aircraft on which THOMPSON was working as a flight attendant. The four female passengers were aged seven, nine, eleven and fourteen years old at the time the recordings were made. The earliest recording was made on January 26, 2023. The latest recording was made on August 23, 2023.

5.      The information in this affidavit is based upon my training and experience, my personal knowledge of this investigation, and information provided to me by other FBI Special Agents, FBI Task Force Officers and MSP Troopers who have assisted in this investigation and have experience investigating criminal matters. In submitting this affidavit, I have not included each and every fact known to me about the investigation, but instead have included only those facts which I believe are sufficient to establish the requisite probable cause.

## PROBABLE CAUSE

### I.  THOMPSON's Recording or Attempted Recording of Minor A En Route to Boston on September 2, 2023

6.      On the morning of September 2, 2023, American Airlines flight 1441 departed Charlotte, North Carolina, with a destination of Boston, Massachusetts. A fourteen-year-old female ("Minor A"), her minor sibling, and her parents were passengers onboard flight 1441. The family was assigned to seats 14A through D, in the main cabin of the aircraft. Upon landing in Boston, it was reported to law enforcement that approximately midway through the flight, Minor A had discovered a concealed recording device (iPhone) in the first-class lavatory after she had partially undressed and used the toilet. American Airlines Flight Attendant Estes Carter THOMPSON III was identified by Minor A and witnesses as the individual suspected of placing

2

the recording device in the lavatory.

**Minor A**

7.      Minor A was interviewed by the MSP upon the arrival of flight 1441 at Boston and she told them the following:

a.      Approximately midway through the flight, Minor A got up to use the main cabin lavatory nearest to where the family was seated. This lavatory was located in the approximate middle of the main cabin, behind where the family was seated. When Minor A arrived at the lavatory it was occupied. She had been waiting a short time when a male flight attendant, later identified as THOMPSON, approached Minor A and told her that the first-class lavatory was unoccupied and that she could use it. THOMPSON escorted Minor A as she went forward on the aircraft toward the first-class lavatory. THOMPSON told Minor A that before she entered, he had to wash his hands. In addition, THOMPSON told Minor A that the lavatory's toilet seat was broken and that it would be fixed when flight 1441 returned to Charlotte. THOMPSON then entered the lavatory for a period of time. Minor A felt that the amount of time THOMPSON was in the lavatory was a little long for simply washing his hands. After THOMPSON exited the lavatory Minor A entered.

b.      When she entered the lavatory, Minor A observed red stickers on the underside of the toilet seat lid, which was in the open position. The stickers looked official. Minor A assumed, based on THOMPSON's statements to her, that the stickers were related to the toilet seat being broken and that the toilet was still in working order. Not thinking anything was wrong, Minor A then proceeded to partially undress, removing or pulling down her shorts and underwear, in order to utilize the toilet.

c.      When Minor A was done, she stood up, dressed, and turned to flush the

3

toilet. When she turned, Minor A then noticed that an iPhone was actually protruding out from underneath the red stickers. The flash of the iPhone was now constantly illuminated. This caused Minor A to notice the iPhone protruding out, whereas she had not noticed it prior to undressing and using the toilet. Minor A looked closely at the portion of the iPhone not covered by the stickers. She could see that the iPhone or its case was dark in color and textured. Minor A also noticed a white dot on the phone or case near the illuminated flash. Minor A immediately knew this was wrong and used her phone to take a picture of the red stickers and concealed iPhone in order to show it and report what happened to her parents.

     d.     Minor A exited the lavatory. Minor A observed that THOMPSON then immediately entered the lavatory. Minor A returned to her seat. She immediately reported what had happened and showed the picture she had taken of the stickers and concealed iPhone to her mother.

     e.     Minor A described THOMPSON (whose name she did not know) as a white male with brown hair and a beard, which accurately described THOMPSON's appearance at the time. Minor A also told investigators that THOMPSON was the only male flight attendant onboard flight 1441, which other witnesses and the airline later confirmed.

     f.     The photo, which was provided to law enforcement and I have viewed, showed two red and white stickers affixed to the underside of the toilet seat partially concealing a dark colored iPhone with its flash illuminated. The stickers, which had a red background, bore white print that stated, "INOPERATIVE CATERING EQUIPMENT" and "REMOVE FROM SERVICE." "SEAT BROKEN" was hand-written in black ink on one of the stickers. Upon close examination, a white mark is visible on the iPhone or its case in close proximity to the flash.

4



**Witnesses in the First-Class Cabin**

8.      The FBI interviewed witnesses in the first-class cabin. One witness told the FBI that he had used the first-class lavatory early in the flight and there were no red stickers affixed to the underside of the toilet seat lid at that time, and the toilet and/or seat functioned normally.

9.      Two passengers observed a young female passenger (Minor A) come up to use the first-class lavatory midway through the flight.  First-class passenger T.D.[1], who was seated in row 1, observed that just before Minor A entered the first-class lavatory, the only male flight attendant onboard (THOMPSON) told Minor A to wait a minute, as he needed to wash his hands. THOMPSON then went into the lavatory for a time. After THOMPSON came out, Minor A entered the lavatory.

10.      First-class passenger R.M.[2], who was seated in row 2, likewise observed

---

[1] The identity of T.D. is known to the government but has been redacted for his privacy.

[2] The identity of R.M. is known to the government but has been redacted for his privacy.

THOMPSON enter the lavatory before Minor A, THOMPSON exit, and Minor A enter. R.M. observed that when Minor A exited the lavatory, THOMPSON immediately re-entered it. Shortly thereafter, THOMPSON exited the lavatory and walked back to the main cabin.

11.     First-class passenger E.K.[3], who was seated in row 5, told the FBI that approximately midway through the flight, E.K. was waiting in his seat for the first-class lavatory to be available when he observed a young girl (Minor A) exit the lavatory. E.K. stood up and started walking up the aisle to the lavatory when a male flight attendant (THOMPSON) jumped in front of E.K. and quickly entered the lavatory.  After THOMPSON exited, E.K. entered the lavatory.  E.K. did not observe anything out of the ordinary. There were no red stickers affixed to the underside of the toilet seat lid at that time. He used the lavatory and the toilet and/or seat functioned normally.

12.     The first-class flight attendant, Flight Attendant 1 ("FA1")[4] told law enforcement that on September 2, 2023, she likewise observed THOMPSON appear to direct Minor A to the first-class lavatory and THOMPSON quickly entering the lavatory after Minor A exited, thereby cutting off a male first-class passenger who was about to enter the lavatory.

**Report to Minor A's Mother**

13.     Minor A's mother told law enforcement that after Minor A told her what happened, she went to inspect the first-class lavatory.  A passenger was occupying it at the time, so she waited in her seat and then rushed into the lavatory as soon as that passenger exited.  The stickers and concealed iPhone were no longer there.

---

[3] The identity of E.K. is known to the government but has been redacted for his privacy.

[4] The identity of FA1 is known to the government but has been redacted for her privacy.

**Report to Flight Attendants and Confrontation of THOMPSON**

14.     After inspecting the first-class lavatory, Minor A's mother told FA1 about what had happened to Minor A.  Minor A's mother then called Minor A to the front of the aircraft. Minor A was visibly shaking. Minor A showed FA1 the picture she had taken of the stickers and concealed iPhone and told her that she had been told to use the first-class lavatory.  These observations led FA1 to suspect that THOMPSON had placed the stickers and concealed iPhone in the first-class lavatory.  She was not immediately able to report the matter to the other flight attendants because THOMPSON was in the way.

15.     Minor A's father told law enforcement that, after being told on the flight by Minor A's mother what had happened, he approached the three flight attendants gathered in the rear galley, who law enforcement later identified as Flight Attendant 2 ("FA2"), Flight Attendant 3 ("FA3"),[5] and THOMPSON.  Minor A's father told them that Minor A had found a phone positioned to film her while she used the first-class lavatory and showed the group the picture that Minor A had taken of the red stickers and concealed iPhone.

16.     Since there was only one male flight attendant onboard flight 1441 (THOMPSON), Minor A's father then engaged THOMPSON directly and demanded to see his phone. He saw the color drain out of THOMPSON's face. THOMPSON responded that he did not know what Minor A's father was talking about. Minor A's father again demanded to see THOMPSON's phone. THOMPSON then walked away quickly up the aisle. He accessed an overhead bin near his flight attendant jump seat and removed his iPhone from his suitcase. As THOMPSON walked back to where Minor A's father, FA2 and FA3 were, Minor A's father could see that THOMPSON

_____

[5] The identities of FA2 and FA3 are known to the government but have been redacted for their privacy.

7

appeared to have unlocked his iPhone and was scrolling through it. Finding THOMPSON's actions highly suspicious, Minor A's father rushed towards THOMPSON and grabbed the iPhone from his hands. Minor A's father estimated that THOMPSON held the iPhone for approximately ten to fifteen seconds before the father grabbed it from him.

17.     Minor A's father returned to the galley area where FA2 and FA3 had remained, with THOMPSON following behind him. Minor A's father attempted to view the contents of THOMPSON's iPhone but it had locked. He then asked THOMPSON why he told Minor A to use the first-class lavatory. THOMPSON, who appeared uncomfortable, stated that he had only gone into that lavatory once and that there was no phone or camera present. THOMPSON then unlocked the iPhone in front of the group and scrolled through what appeared to be folders. Minor A's father took the iPhone from THOMPSON again and handed it to FA2.

18.     FA2 told law enforcement that after Minor A's father handed THOMPSON's iPhone to FA2, she opened the photograph application. She observed content in the application but was unable to determine what the displayed images were. FA2 was nervous while she attempted to look at the photos because Minor A's father was angry and she found it hard to navigate someone else's phone. FA2 was simultaneously trying to de-escalate the situation. THOMPSON then said, "See... There's nothing there." He then took his iPhone from FA2. FA2 told Minor A's father that she would notify the Captain of the situation and Minor A's father returned to his seat.

19.     FA2 then went to the first-class cabin and spoke with FA1. They notified the Captain of the situation, and law enforcement on the ground was notified. FA2 then returned to the main cabin to resume her duties, and FA1 went back to her duties in the first-class cabin.

20.     FA1 told law enforcement that thereafter THOMPSON returned to the first-class

cabin. THOMPSON approached FA1 and said, "This is very weird. I only went into the bathroom one time." Shortly thereafter, THOMPSON darted into the lavatory and locked himself inside. THOMPSON remained in the lavatory for three to five minutes. When he exited the lavatory flight 1441 was beginning its descent and THOMPSON returned to the main cabin.

### THOMPSON

21.     THOMPSON was briefly interviewed by the MSP upon the arrival of flight 1441 at Boston, both on the aircraft and then on the jet bridge in a non-custodial setting, prior to *Miranda* warnings being given. THOMPSON denied knowledge of the recording or attempted recording of Minor A in the first-class lavatory. THOMPSON was asked by an MSP Trooper if they could look at his phone. THOMPSON removed his iPhone from his pocket. He granted consent, unlocked his iPhone, and handed it to the Trooper. THOMPSON remarked that his iPhone was new and that he had obtained it only the day before. The Trooper observed that THOMPSON's iPhone appeared to be in a used condition. When the Trooper looked in THOMPSON's iPhone, the call log appeared empty, there appeared to be no text messages and there appeared to be no photos or videos on the iPhone, indicating that photos or videos may have been deleted since FA2 had seen them in the iPhone and the device may have been restored to factory settings. THOMPSON's iPhone did, however, appear to be actively linked to an Apple account with Apple ID XXXXXXX@gmail.com[6] (THOMPSON's iCloud account) and displayed the name "Estes Carter Thompson III." THOMPSON's iPhone was noted to be an iPhone 12 Pro.[7]

---

[6] The email address is known to law enforcement but redacted in this public document.

[7] According to Apple, the iPhone 12 Pro contains a camera that takes both still photographs and videos and is equipped with a flash that will illuminate in a steady-state for videos shot in low-light conditions.

22.     THOMPSON, his iPhone, and his suitcase were detained pending additional investigation and brought to the MSP barracks at Logan Airport. When THOMPSON was asked to speak with FBI and MSP investigators about the incident, he declined to do so without an attorney present. THOMPSON then left. THOMPSON's iPhone and suitcase remained detained in the custody of the FBI pending an application for a search warrant.

### Search of THOMPSON's Suitcase

23.     On September 19, 2023, the FBI obtained a search warrant for THOMPSON's suitcase.  *See* 23-MJ-5466-JGD.  Upon executing the search warrant, the FBI located eleven "INOPERATIVE CATERING EQUIPMENT" stickers, of the type observed by Minor A on the back of the toilet seat on board the flight on September 2, 2023 inside the suitcase.  THOMPSON's United States passport was also located in the suitcase.

### Search of THOMPSON's iPhone

24.     On September 19, 2023, the FBI obtained a search warrant for THOMPSON's iPhone.  *See* 23-MJ-5465-JGD.  On September 20, 2023, pursuant to the search warrant, THOMPSON's iPhone was submitted to the FBI's New England Regional Computer Forensic Laboratory to be forensically imaged. It was determined that THOMPSON's iPhone had been reset to factory settings at 13:31:30 UTC, or 9:31:30 AM EDT, on September 2, 2023.[8] THOMPSON's iPhone, utilizing Apple ID XXXXXXX@gmail.com (THOMPSON's iCloud account), then connected to "americanairlinesinflight.com" at 13:34:55 UTC, or 9:34:55 AM EDT, on September 2, 2023. This was approximately 30 minutes after Minor A took the photograph of the iPhone attached to the back of the toilet seat.

---

[8] As a result of the factory reset, no images or videos were located on Thompson's iPhone.

10

## II. THOMPSON's Previous Recording of Minors B, C, D, and E and Related Possession of Child Pornography in Boston on September 2, 2023

### Search of THOMPSON's iCloud Account

25.     On September 19, 2023, the FBI obtained a search warrant for THOMPSON's iCloud account.[9]  *See* 23-MJ-5467-JGD.  On October 2, 2023, Apple provided the FBI with encrypted data responsive to the search warrant. The data was decrypted by the FBI and made available for agents' review.[10]

26.     Information provided by Apple indicated that THOMPSON was the registered owner of the iCloud account since at least 2013 and that THOMPSON's iPhone 12 Pro was registered to his iCloud account on September 21, 2021.  THOMPSON's iCloud account's "iCloud Account Services" were accessed at 13:31:15 UTC, or 9:31:15 AM EDT, on September 2, 2023, 15 seconds before the THOMPSON's iPhone was factory reset. Activities consistent with reconnecting a reset iPhone to an iCloud account then commenced approximately 7 minutes later and continued for approximately 10 minutes. The Internet Protocol (IP) addresses associated with this activity resolve to Viasat Inc., an internet service provider that provides satellite internet service onboard certain American Airlines flights.

27.     From the material in the THOMPSON's iCloud account that agents have reviewed to date, I have identified what appear to be four additional instances other than that involving

---

[9] An iCloud account is a form of "cloud storage," a form of digital data storage in which a user's digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to the user over the Internet. When a user's iPhone is connected to their iCloud account, the user can access the materials stored in their iCloud account using the Internet.

[10] The search warrant for THOMPSON's iCloud account issued in 23-MJ-5467 authorized agents to review contents of the account back to March 1, 2023.  A subsequent search warrant issued in 23-MJ-5555 on November 16, 2023 removed date limitations on the review.

Minor A[11] in which THOMPSON recorded a minor using the lavatory on an aircraft, described

below.[12] THOMPSON possessed those recordings in his iCloud account on September 2, 2023.[13]

### Minor B

28.     Within THOMPSON's iCloud account, I discovered a video that metadata indicate

was created by an iPhone 12 Pro (i.e., the same type of device as THOMPSON's iPhone) at

12:57:42 UTC or 8:57:42 AM EDT on August 23, 2023. The video is approximately 109 seconds

or 1 minute and 49 seconds in duration. Information provided by American Airlines indicates that

---

[11] I did not locate a video of Minor A using the lavatory in THOMPSON's iCloud account. It is possible that THOMPSON recorded a video of Minor A on his phone but successfully deleted it prior to his phone syncing with his iCloud account on board the aircraft, but I cannot say for certain based on the state of the evidence at this time.

[12] As described below, FBI has contacted the families of each of the minors regarding whom there is evidence of THOMPSON recording or attempting to record on aircraft.

[13] I am aware that the "preferred practice" in the First Circuit is that a magistrate judge view images that agents believe constitute child pornography by virtue of their lascivious exhibition of a child's genitals. *United States v. Brunette*, 256 F.3d 14, 18-19 (1st Cir. 2001). Here, however, the descriptions offered "convey to the magistrate more than [my] mere opinion that the images constitute child pornography." *United States v. Burdulis*, 753 F.3d 255, 261 (1st Cir. 2014) (distinguishing *Brunette*). All four of the children depicted in the recordings described herein have been positively identified by their parents as children aged between 7 and 14 years old at the time the recordings were made, well under the age of eighteen; moreover, three of the children (Minors B, C, and E) are described as appearing pre-pubescent in the videos. The descriptions of the files provided below are sufficiently specific as to the age and appearance of the alleged children as well as the nature of the framing of the camera angle to focus on the children's genitalia and buttocks in each file that the Court need not view the files to find that they depict child pornography. *See United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice is for an applicant seeking a warrant based on images of alleged child pornography is for an applicant to append the images *or provide a sufficiently specific description of the images* to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added); *see also United States v. LaFortune*, 520 F.3d 50, 56 (1st Cir. 2008) (similarly emphasizing *Syphers* court's use of "or" in describing the *Brunette* "best practice"). Where I have included such nonconclusory, sufficiently specific descriptions, this Court need not view the imagery to find that they depict child pornography. Nonetheless, the described imagery is available for review at the Court's request.

THOMPSON was working as a flight attendant aboard American Airlines flight 1617 flying from Charlotte, North Carolina, to Denver, Colorado, when the video was created.

29.     The video starts with a view of an aircraft lavatory toilet with its lid up and seat down. The view quickly shifts and depicts THOMPSON attaching the recording device, which I believe to be his iPhone, to a spot just above the toilet seat, which I believe to be the underside of the toilet lid, which was in an upright position. At this point in the video, the camera depicts the view from the rear of the toilet seat facing toward the lavatory door. The video shows that THOMSPON utilized one or more "INOPERATIVE CATERING EQUIPMENT" stickers, of the type observed by Minor A and located during the search of Thompson's luggage, to attach the phone to the toilet lid. In attaching the phone, THOMPSON partially covered the camera lens and in doing so limited the camera's field of view. THOMPSON then exited the lavatory.

30.     At that point, a female child who appears pre-pubescent ("Minor B," YOB 2017) appears in the video, entering the lavatory. Minor B was wearing light blue-green dress and gray tights. Due to the limited field of view, Minor B's upper body and face are not visible. Minor B then partially undressed, thereby exposing her unclothed buttocks and genitalia to the camera, and used the toilet. Minor B then stood up, thereby exposing her unclothed buttocks and genitalia once more, dressed, and left the lavatory. An individual whose upper body and face are not visible due to the limited field of view, but whom I believe to be THOMPSON, thereafter immediately entered the lavatory and removed the phone and sticker(s), from their location and the video ends.

31.     A modified version of this video was also located in Thompson's iCloud account. It appears to have been created after the source video. The video is a shortened version of the source that starts with Minor B in the lavatory and about to partially undress. It ends after Minor B used the toilet and dressed but before she left the lavatory. The video was also modified to play

13

in slow motion.

32.     Minor B's mother identified a still photograph taken from this video as depicting Minor B, based on the clothing Minor B was wearing in the photograph.  Minor B's mother showed investigators photographs of Minor B on flight 1617 wearing said clothing and showed investigators the clothing itself.   At the time the video was made, Minor B was 7 years old.

**Minor C**

33.     Within THOMPSON's iCloud account, I discovered a video that metadata indicates was created by an iPhone 12 Pro at 16:34:18 UTC or 12:34:18 PM EDT on August 15, 2023. The video is approximately 36 seconds in duration. Information provided by American Airlines indicates that THOMPSON was working as a flight attendant aboard American Airlines flight 2080 flying from Orlando, Florida, to Charlotte, North Carolina, when the video was created.

34.     The video starts with a view of an individual dressed in a flight attendant's uniform, whom I recognize to be THOMPSON, showing a female child who appears to be pre-pubescent ("Minor C," YOB 2011), into an aircraft lavatory and appearing to point towards the toilet. The point of view of the recording device, which I believe to be Thompson's iPhone, is the same as in the video of Minor B, that is, apparently positioned just above the toilet seat against the upright toilet lid, and facing the lavatory door. Minor C, who was wearing an orange sweatshirt and blue shorts, then entered the lavatory and THOMPSON closed the door, leaving Minor C alone in the lavatory. Minor C then partially undressed, thereby exposing her unclothed buttocks and genitalia to the camera, and used the toilet. Minor C then stood up, thereby exposing her unclothed buttocks and genitalia once more, and the video ends.

35.     A modified version of this video was also located. It appears to have been created after the source video. The video is a slightly shortened version of the source in that it that starts

14

with Minor C entering the lavatory. The video was also modified to play in slow motion.

36.     Minor C's mother identified a still photograph taken from this video as depicting Minor C and showed investigators the orange sweatshirt she wore on the flight. At the time the video was made, Minor C was 11 years old.

**Minor D**

37.     Within THOMPSON's iCloud account, I discovered a video that metadata indicates was created by an iPhone 12 Pro at 21:57:21 UTC or 5:57:21 PM EDT on July 26, 2023. The video is approximately 135 seconds or 2 minutes and 15 seconds in duration. Information provided by American Airlines indicates that THOMPSON was working as a flight attendant aboard American Airlines flight 1615 flying from Charlotte, North Carolina, to Kansas City, Missouri, when the video was created.

38.     The video starts with a view of an aircraft lavatory door opening and a female child who appears to have reached puberty and who, based on facial features, the size of her body, and the presence of hair on her genitals, appears to be approximately twelve to fourteen years old ("Minor D," YOB 2009), stepping into the lavatory. An individual who appears to be dressed in a flight attendant's uniform can be partially seen in the background near the open door. A male voice, which I believe to be THOMPSON's, can be heard above the ambient aircraft noise saying words to the effect of, "Be careful because that seat toilet seat is really messed up so be careful." The point of view of the recording device, which I believe to be THOMPSON's iPhone, is the same as the ones that captured Minors B and C, that is, apparently positioned just above the toilet seat against the upright lid and facing the lavatory door. Minor D, who was wearing a blue shirt and black shorts, entered the lavatory and the door was closed. Minor D then partially undressed, thereby exposing her unclothed buttocks and genitalia to the camera, and used the toilet. Minor D

15

then stood up, thereby exposing her unclothed buttocks and genitalia once more, dressed, and the video ends.

39.     A modified version of the source video was also located. It appears to have been created after the source video. The video was also modified to play in slow motion. In addition, within THOMPSON's iCloud account, I located approximately 98 still images that appear to be screen shots or extracted frames of the source video. They generally show Minor D's buttocks and genitalia.

40.     Also within THOMPSON's iCloud account, I discovered a photograph that metadata indicates was created by an iPhone 12 Pro at 22:53:02 UTC or 5:53:02 PM CDT on July 26, 2023.  As flight 1615 arrived in Kansas City shortly after 5:32 PM CDT, this suggests that the flight had landed and passengers were likely disembarked or in the process of doing so.  The photograph was of a handheld electronic device bearing an American Airlines logo and of the type used by flight attendants to view seat assignments and place food and beverage orders.  Such a device was located during the search of THOMPSON's suitcase.  Displayed on the screen of the device were the names and seat assignments of Minor D and her family.

41.     Minor D's parents identified a still photograph taken from this video as depicting Minor D and showed an investigator the blue shirt that Minor D wore while onboard flight 1615. At the time the video was made, Minor D was 14 years old.

**Minor E**

42.     Within THOMPSON's iCloud account, I discovered a video that metadata indicates was created by an iPhone 12 Pro at 15:42:55 UTC or 9:42:55 PM CDT on January 26, 2023. The video, which plays in slow motion, is approximately 479 seconds or 7 minutes and 59 seconds in duration. Information provided by American Airlines indicates that THOMPSON was working as

a flight attendant aboard American Airlines flight 2869 flying from Austin, Texas, to Los Angeles, California, when the video was created.

43.     The video starts with a view of an aircraft lavatory door opening and a female child who appears to be pre-pubescent ("Minor E," YOB 2013), stepping into the lavatory.  The point of view of the recording device, which I believe to be THOMPSON's iPhone, is the same as the ones that captured Minors B, C and D, that is, apparently positioned just above the toilet seat against the upright lid and facing the lavatory door. Minor E, who was wearing a white sweatshirt and black pants, entered the lavatory and the door was closed behind her by someone unseen. Minor E then partially undressed, thereby exposing her unclothed buttocks and genitalia to the camera, and used the toilet. Minor E then stood up, thereby exposing her unclothed buttocks and genitalia once more, dressed, and the video ends.

44.     Within THOMPSON's iCloud account, I also discovered approximately 272 still images of Minor E that appear to be screen shots or extracted frames of the source video, along with edited versions of those images, that generally show Minor E's buttocks and genitalia.  The edits include cropping the lavatory background, zooming in on Minor E, and placing close-up views of Minor E's genitals side-by-side with those of her face.  The still images were located within a private photo vault.[14]   Metadata indicates that the still images were created or modified on January 30, 2023, May 8, 2023 and June 10, 2023.

45.     Minor E's mother identified a still photograph taken from this video as depicting Minor E and also showed investigators the white sweatshirt that Minor E wore on flight 2869.  At

---

[14] A private photo vault is a location in which photos and videos can be securely stored behind a password, personal identification number, or biometric lock, separate from the user's main photo and video storage location on the device.

the time the video was made, Minor E was 9 years old.

### Other Evidence of Sexual Interest in Children

46.     Within THOMPSON's iCloud account, I discovered over 50 images of a female child who was flying on an aircraft as an unaccompanied minor ("Minor F", YOB 2013). Minor F was wearing a black sweater or sweatshirt and yellow pants.  She had a stuffed animal on the seat beside her. Metadata indicates the images were created starting at 10:52:39 UTC or 6:52:39 AM EDT on July 9, 2023.  The initial images of Minor F were of her seated and awake pre-flight.  The next set of images of Minor F were of her sleeping, many of which were close-ups of her face. The final set of images of Minor F were screenshots of a video of her getting up out of her seat and exiting the aircraft, many of which focused on her clothed buttocks.  Information provided by American Airlines indicates that THOMPSON was working as a flight attendant aboard American Airlines flight 1977 flying from Charlotte, North Carolina, to San Antonio, Texas, when the images were created.  Minor F's mother identified a still photograph taken from the video as depicting Minor F and also confirmed that she had been wearing the clothing depicted in that video on that flight, on which she was an unaccompanied minor.  At the time, Minor F was 9 years old.

47.     Although review of Thompson's iCloud account is ongoing, agents have located additional evidence of THOMPSON's sexual interest in children within the account. For example, agents have located hundreds of images of child pornography, which appear to have been created through an artificial intelligence ("AI") web site. Stored within the account are what appear to be screenshots of the words that the user of the web site (believed to be THOMPSON) typed into the AI site in an effort to create a child pornography image, although the AI site was not always successful in creating what THOMPSON described. For example, one screen shot depicts the phrase "10 years old blonde very small breasts no tits flat chested skinny body beautiful face blue

eyes pigtails huge cock inside her pussy getting fucked laying on her back" and the accompanying image, generated by that search or command, depicts what appears to be an AI-generated image of a prepubescent child, laying on her back, fully nude. The "child" has blonde hair, blue eyes, and pigtails. The "child's" legs are spread apart, exposing her vagina. Based upon the facial features of the "child," and the "child's" size, the "child" appears to be approximately 10 years old.

## CONCLUSION

48.     Based on the foregoing, I submit that there is probable cause to believe that, on or about September 2, 2023, Estes Carter THOMPSON III employed, used, persuaded, induced, enticed, and coerced a minor, "Minor A (YOB 2009)," to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and attempted to do so, and knew and had reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and the visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by computer, and the visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, all in violation of 18 U.S.C. §§ 2251(a) and (e).

49.     There is further probable cause to believe that, on or about September 2, 2023, Estes Carter THOMPSON III knowingly possessed material that contained one and more images of child pornography, as defined in Title 18, United States Code, Section 2256(8), that involved a prepubescent minor and a minor who had not attained 12 years of age, and that had been mailed, and shipped and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

Jason D. Costello
Special Agent, FBI

Sworn to before me by telephone pursuant to Fed. R. Crim. P. 4.1 on this 9th day of January, 2024.

Hon. Judith G. Dein
United States Magistrate Judge

20

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 24-MJ-5009-JGD |
| | ) | |
| | ) | |
| Estes Carter Thompson III | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*     Estes Carter Thompson III                                                          ,

who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment   ❑ Superseding Indictment   ❑ Information   ❑ Superseding Information   ☑ Complaint

❑ Probation Violation Petition   ❑ Supervised Release Violation Petition   ❑ Violation Notice   ❑ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 2251(a) and (e): Sexual Exploitation of Children, and attempt) and
18 U.S.C. § 2252A(a)(5)(B) and (b)(2): Possession of Child Pornography depicting prepubescent minor, and attempt

Date:     01/09/2024

_____
*Issuing officer's signature*

Judith Gail Dein, U.S. Magistrate Judge

City and state:     Boston, Massachusetts

*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* 01/09/2024 01/18/2024 MT , and the person was arrested on *(date)* 01/18/2024 |
| at *(city and state)* LYNCHBURG, VA . |
| Date: 01/18/2024 |

_____
*Arresting officer's signature*

SA MARSHALL TRIGG, FBI
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

**CRIMINAL MINUTES - INITIAL APPEARANCE - RULE 5**
**(Complaint/Indictment/Other District)**

Case No.: **7:24MJ4**                                        Date: **1/23/2024**

| | |
|---|---|
| **Defendant(s): Estes Carter Thompson, III, Custody** | **Counsel: Beatrice Diehl, FPD** |

PRESENT:    Presiding Judge:      Kailani Memmer          TIME IN COURT: 20 min
                    Deputy Clerk:        K.Saville
                    Court Reporter:      K.Saville/FTR
                    AUSA:                 Lee Brett
                    USPO:                 Alison Spence, Dennis Gardner

☒    Defendant arrested on warrant from District of Massachusetts.

**RIGHTS:**

☒    Defendant advised of charges and nature of proceedings and provision of Rule 20.
☒    Defendant advised of right to retain counsel or to request that counsel be appointed.
☒    Defendant advised of right to preliminary exam.
☒    Defendant advised of right to identity hearing.
☒    Defendant advised of right to a bond/detention hearing.

**COUNSEL:**

☒    Defendant requests appointment of counsel.  CJA 23 Financial Affidavit completed. FPD Appointed.

**IDENTITY:**

☒    Identity hearing waived.*

**PRELIMINARY HEARING:**

☒    Defendant requests preliminary hearing in prosecuting district.*

**RELEASE/DETENTION:**

☒    Defendant does not contest detention.
☒    Government moves for detention.
☒    Order of Commitment to Another District (AO 94).

**Additional Information:**

1: 21
All parties present and represented by counsel.
Court address that the minor victims, families and counsel, and victim witness coordinator have been allowed to attend via zoom, Court notifies all parties of no recording of hearing.

DPPA oral and written.
Defendant sworn.
Court addresses the defendant.
Govt addresses the defendant on elements of charge, possible penalties.
Defendant wishes to go back to Massachusetts for any further hearings, preliminary and detention.
Defendant will be remanded to USMS and transferred back to Massachusetts.
Adjourned
1:41

**If released on bond use-** February 1 at 11 AM court date for District of Massachusetts.  1 Courthouse Way

BOSTON, MASSACHUSETTS 02210

## THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

UNITED STATES OF AMERICA

**CASE NO.: 7:24MJ4**

v.

**DATE: 1/23/2024**

Estes Carter Thompson, III

**TYPE OF HEARING: IA/R5**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PARTIES:**

| | | |
|---|---|---|
| 1. | **C. Kailani Memmer** | 6. Dennis Gardner, USPO |
| 2. | **Lee Brett, AUSA** | 7. |
| 3. | **Beatrice Diehl, FPD** | 8. |
| 4. | **Estes Thompson, Def** | 9. |
| 5. | Celison Spence, USPO | 10. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Recorded by: **K. Saville**                    Time in Court: 20min

| INDEX NO. | SPKR. | INDEX NO. | SPKR. | INDEX NO. | SPKR. | INDEX NO. | SPKR. | INDEX NO. | SPKR. |
|---|---|---|---|---|---|---|---|---|---|
| 121 | 1 | | | | | | | | |
| | 3 | | | | | | | | |
| | 4 | | | | | | | | |
| 135 | 1 | | | | | | | | |
| | 3 | | | | | | | | |
| | 4 | | | | | | | | |
| | 2 | | | | | | | | |
| 139 | 1 | | | | | | | | |
| | 4 | | | | | | | | |
| | 2 | | | | | | | | |
| | 3 | | | | | | | | |
| 141 | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Case No. 7:24-MJ-00004** |
| **V.** | ) | |
| | ) | |
| **ESTES CARTER THOMPSON, III** | ) | |

## O R D E R

This matter comes before the Court on its own initiative. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, the Court hereby **ORDERS** the United States to adhere to the disclosure obligations set forth in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *Brady v. Maryland* instructs that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Failure to adhere to this requirement may result in serious consequences, up to and including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the court.

Having given counsel for the United States the oral admonition required by the Due Process Protections Act, this Order serves as a reminder of prosecutorial obligation and duties in accordance with Fed. R. Cr. P. 5(f).

It is so **ORDERED**.

Entered: January 23, 2024

C. Kailani Memmer
United States Magistrate Judge

AO 94 (Rev. 06/09) Commitment to Another District

# UNITED STATES DISTRICT COURT
### for the
### Western District of Virginia

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )    Case No.   7:24MJ4 |
| | ) |
| Estes Carter Thompson, III | )    Charging District's |
| *Defendant* | )    Case No.   1:24MJ5009 |

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the _____ District of Massachusetts ,

*(if applicable)* _____ division. The defendant may need an interpreter for this language:

_____ .

The defendant:    ☐ will retain an attorney.

                ☒ is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant. The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled. The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date: _____ 01/23/2024 _____       _____
                                                      *Judge's signature*

                     C. Kailani Memmer, United States Magistrate Judge
                                     *Printed name and title*

AO 466A (Rev. 12/09) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
for the

Western District of Virginia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.  7:24MJ4 |
| | ) | |
| Estes Carter Thompson, III | ) | Charging District's Case No.   1:24MJ5009 |
| *Defendant* | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*       District of Massachusetts       .

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;

(5)     a hearing on any motion by the government for detention;

(6)     request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☐     an identity hearing and production of the warrant.

☐     a preliminary hearing.

☐     a detention hearing.

☒     an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district.  I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:      01/23/2024

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Beatrice Diehl
*Printed name of defendant's attorney*